IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VICTOR M MONTEZ,                          No C-08-0815 VRW (PR)

        Petitioner,

    v                                     ORDER DENYING PETITION FOR WRIT
                                      OF HABEAS CORPUS
BEN CURRY, Warden

        Respondent.
                                        /

        Pro se petitioner Victor Montez, a state prisoner incarcerated at the Correctional Training Facility in Soledad, California, seeks a writ of habeas corpus under 28 USC section 2254 challenging the California Board of Parole Hearings' ("BPH") May 31, 2006 decision to deny him parole.

        Per order filed on June 24, 2008, the court found petitioner's claim that BPH violated his due process rights, when liberally construed, colorable under section 2254, and ordered respondent to show cause why a writ of habeas corpus should not be granted.  Doc #5.  Respondent has filed an answer and petitioner has filed a traverse.  Doc ## 6 & 7.

I

On August 9, 1980, petitioner, his wife and a female friend were driving to Oxnard when their vehicle became disabled. Doc #6-7 at 11.  They all agreed that the two women would pretend to hitchhike while petitioner hid in the bushes, and that petitioner would ambush the first motorist to stop by brandishing a handgun that he was carrying.  Id at 11-12.  When the victim, Michael Stewart, stopped for the women, petitioner ran out from the bushes holding the handgun as planned and entered the back seat of Stewart's car.  Id at 12.  Petitioner threatened to kill Stewart if he did not drive them to Oxnard and at some point fired a shot which struck Stewart and killed him.  Id.  Petitioner then dragged Stewart's body from the car and hid it under a tree and shrubs.  Id.

On May 21, 1982, petitioner was sentenced to fifteen years to life in state prison following his guilty plea to second degree murder, plus two years for a firearm enhancement to be served consecutively.  Doc #6-2 at 25.  His minimum eligible parole date was April 9, 1990.  Doc #6-7 at 4.

On May 31, 2006, petitioner appeared before BPH for his seventh parole suitability hearing.  Doc #1 at 8.  At that hearing, BPH found petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if [] released from prison."  Doc #6-7 at 56.  BPH cited several reasons to support its decision, including: (1) the dispassionate and calculated nature of the crime; (2) the particular cruelty of killing a man who had stopped to help people in distress; (3) the

2

trivial motive for the crime in comparison with its magnitude; (4) the defilement of the victim after the offense; (5) petitioner's escalating pattern of criminal conduct and failure to benefit from previous attempts at rehabilitation; and (6) petitioner's lack of concrete parole plans.  Id at 56-62.  Petitioner's parole was deferred for one year.  Id at 56.

Petitioner unsuccessfully challenged BPH's decision in the state superior and appellate courts.  Doc #6-4 at 2-4 & #6-10 at 2.  On January 3, 2008, the California Supreme Court summarily denied petitioner's petition for review.  Doc #6-11 at 2.  This federal petition for a writ of habeas corpus followed.  Doc #1.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 USC § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction."  <u>White v Lambert</u>, 370 F3d 1002, 1009-10 (9th Cir 2004).  Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 USC § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits:  "(1) resulted in a decision that was contrary to, or involved an unreasonable

3

1  application of, clearly established Federal law, as determined by
2  the Supreme Court of the United States; or (2) resulted in a
3  decision that was based on an unreasonable determination of the
4  facts in light of the evidence presented in the State court
5  proceeding." 28 USC § 2254(d).  Under this deferential standard,
6  federal habeas relief will not be granted "simply because [this]
7  court concludes in its independent judgment that the relevant
8  state-court decision applied clearly established federal law
9  erroneously or incorrectly.  Rather, that application must also be
10 unreasonable."  Williams v Taylor, 529 US 362, 411 (2000).

11      While circuit law may provide persuasive authority in
12 determining whether the state court made an unreasonable application
13 of Supreme Court precedent, the only definitive source of clearly
14 established federal law under 28 USC section 2254(d) rests in the
15 holdings (as opposed to the dicta) of the Supreme Court as of the
16 time of the state court decision.  Williams, 529 US at 412; Clark v
17 Murphy, 331 F3d 1062, 1069 (9th Cir 2003).

18      In determining whether the state court's decision is
19 contrary to, or involved an unreasonable application of, clearly
20 established federal law, a federal court looks to the decision of
21 the highest state court to address the merits of a petitioner's
22 claim in a reasoned decision.  LaJoie v Thompson, 217 F3d 663, 669
23 n7 (9th Cir 2000).  Where, as here, the state court cited only state
24 law, the federal court must ask whether state law, as explained by
25 the state court, is "contrary to" clearly established governing
26 federal law.  See, for example, Lockhart v Terhune, 250 F3d 1223,

**4**

1230 (9th Cir 2001); Hernandez v Small, 282 F3d 1132, 1141 (9th Cir 2002) (state court applied correct controlling authority when it relied on state court case that quoted Supreme Court for proposition squarely in accord with controlling authority).  If the state court, relying on state law, correctly identified the governing federal legal rules, the federal court must ask whether the state court applied them unreasonably to the facts.  See Lockhart, 250 F3d at 1232.

### III

Petitioner seeks federal habeas corpus relief from BPH's May 31, 2006 decision finding him unsuitable for parole and denying him a subsequent hearing for one year on the ground that the decision does not comport with due process.  Specifically, petitioner argues that the decision "was not supported by any evidence that [he] is a current threat to public safety."  Doc #1 at 7, emphasis in original.

#### A

Under California law, prisoners serving indeterminate life sentences, like petitioner, become eligible for parole after serving minimum terms of confinement required by statute.  In re Dannenberg, 34 Cal 4th 1061, 1069-70 (2005).  At that point, California's parole scheme provides that the parole board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past

1 convicted offense or offenses, is such that consideration of the
2 public safety requires a more lengthy period of incarceration." Cal
3 Penal Code § 3041(b).  Regardless of the length of the time served,
4 "a life prisoner shall be found unsuitable for and denied parole if
5 in the judgment of the panel the prisoner will pose an unreasonable
6 risk of danger to society if released from prison."  Cal Code Regs
7 tit 15, § 2402(a).  In making this determination, the parole board
8 must consider various factors, including the prisoner's social
9 history, past criminal history, and base and other commitment
10 offense, including behavior before, during and after the crime.  See
11 Cal Code Regs tit 15, § 2402(b)-(d).

12 California law provides that "[t]he nature of the
13 prisoner's offense, alone, can constitute a sufficient basis for
14 denying parole."  In re Rosenkrantz, 29 Cal 4th 616, 682 (2002).
15 The board may not "adopt[] a blanket rule that automatically
16 excludes parole for individuals who have been convicted of a
17 particular type of offense" and must individually consider "all
18 relevant factors" of a case.  Id at 683.  The offense must be
19 "particularly egregious" and involve circumstances beyond "the
20 minimum necessary to sustain a conviction" to justify a denial of
21 parole.  Id.

22 California's parole scheme "gives rise to a cognizable
23 liberty interest in release on parole" that cannot be denied without
24 adequate procedural due process protections.  Sass v California Bd
25 of Prison Terms, 461 F3d 1123, 1127 (9th Cir 2006), quoting
26 McQuillion v Duncan, 306 F3d 895, 902 (9th Cir 2002).  It matters

27
28

6

1 not that a parole release date has not been set for the inmate
2 because "[t]he liberty interest is created, not upon the grant of a
3 parole date, but upon the incarceration of the inmate." Biggs v
4 Terhune, 334 F3d 910, 914-15 (9th Cir 2003).

5 Petitioner's due process rights require that "some
6 evidence" support the board's decision finding him unsuitable for
7 parole. Sass, 461 F3d at 1128. This "some evidence" standard is
8 deferential, but ensures that "the record is not so devoid of
9 evidence that the findings of [the board] were without support or
10 otherwise arbitrary." Superintendent v Hill, 472 US 445, 457
11 (1985). Determining whether this requirement is satisfied "does not
12 require examination of the entire record, independent assessment of
13 the credibility of witnesses, or weighing of the evidence." Id at
14 455. Rather, "the relevant question is whether there is any
15 evidence in the record that could support the conclusion reached by
16 the disciplinary board." Id at 455–56.

17 Due process also requires that the evidence underlying the
18 parole board's decision have some indicium of reliability. Biggs,
19 334 F3d at 915; McQuillion, 306 F3d at 904. Relevant to this
20 inquiry is whether the prisoner was afforded an opportunity to
21 appear before, and present evidence to, the board. See Pedro v
22 Oregon Parole Bd, 825 F2d 1396, 1399 (9th Cir 1987). If the board's
23 determination of parole unsuitability is to satisfy due process,
24 there must be some reliable evidence to support the decision. Rosas
25 v Nielsen, 428 F3d 1229, 1232 (9th Cir 2005).
26 //
27
28

**7**

**B**

Petitioner claims BPH's finding that he was unsuitable for parole violated his due process rights because this finding "was not supported by any evidence that [he] is a current threat to public safety." Doc #1 at 7, emphasis in original. Petitioner is mistaken.

The record shows that BPH afforded petitioner and his counsel an opportunity to speak and present petitioner's case at the hearing, gave them time to review documents relevant to petitioner's case and provided them with a reasoned decision in denying parole. Doc #6-7 at 6-8, 10-11 & 49-64. The record also shows that BPH relied on several circumstances tending to show unsuitability for parole and that these circumstances formed the basis for its conclusion that petitioner posed "an unreasonable risk of danger to society or a threat to public safety if [] released from prison." Doc #6-7 at 56; see Cal Code Regs tit 15, § 2402(a) (stating that a prisoner determined to be an unreasonable risk to society shall be denied parole).

First, BPH found that the commitment offense "was carried out in an especially cruel manner. The victim * * * was shot in the head after he stopped to render aid to what he thought were two individuals that were in distress along the side of the freeway." Doc #6-7 at 56; see Cal Code Regs tit 15, § 2402(c)(1)(D) (listing "exceptionally callous disregard for human suffering" as a factor tending to show unsuitability for parole). Second, BPH found that "[t]he offense was carried out in a very dispassionate and

calculated manner in that the first vehicle to stop was going to be the target." Doc #6-7 at 56-57; see Cal Code Regs tit 15, § 2402(c)(1)(B) (listing "dispassionate and calculated manner" of offense as a factor tending to show unsuitability for parole).

Third, BPH found that "[t]he motive for the crime * * * was very trivial." Doc #6-7 at 57; see Cal Code Regs tit 15, § 2402(c)(1)(E) (listing "inexplicable or very trivial" motive in relation to the offense as a factor tending to show unsuitability for parole). Fourth, BPH found that "[t]he victim was defiled after the offense in that he was stripped, his body was concealed along the shoulder of the Ventura Freeway and just basically left in the shrubbery." Doc #6-7 at 57; see Cal Code Regs tit 15, § 2402(c)(1)(c) (listing "abuse[], defile[ment], or mutilat[ion]" of the victim as a factor tending to show unsuitability for parole).

Fifth, BPH noted petitioner had "an escalating pattern of criminal conduct" and "had failed previous grants of probation." Doc #6-7 at 59. The board concluded that "society's previous attempts to correct [his] criminality" had failed. Id. Finally, BPH emphasized that petitioner should have "firm" parole plans, which included securing placement in a halfway house and developing a "comprehensive" backup plan involving his family members. Id at 60-61.

BPH also considered other factors tending to support suitability for parole including that: petitioner had been discipline free for more than twelve years; he had actively and consistently participated in Alcoholics Anonymous and Narcotics

9

1 Anonymous; he had completed various employability programs; he had
2 received exceptional work reports; his most recent psychological
3 evaluation was very positive and stated that he would "probably pose
4 less risk to society than the average citizen"; and he had many
5 letters of support from various family members.  Doc #6-7 at 27-32,
6 59 & 62-63.

7 The state superior court affirmed BPH's decision to deny
8 petitioner parole, finding that it was supported by "some evidence."
9 Doc #6-4 at 2.  The superior court held that to support a finding
10 that "the motive for the crime is inexplicable or very trivial in
11 relation to the offense," the motive must be "materially less
12 significant (or more 'trivial') than those which conventionally
13 drive people to commit the offense in question, and therefore more
14 indicative of a risk of danger to society if the prisoner is
15 released than is ordinarily present."  Id, quoting Cal Code Regs tit
16 15, § 2402(c)(1)(E) & <u>In re Scott</u>, 119 Cal App 4th 871, 893 (2004).
17 The court held that based on the fact that petitioner "killed the
18 victim because [petitioner] needed a ride to Oxnard," the board was
19 justified in concluding that the motive was "materially less
20 significant than those motives which conventionally drive people to
21 commit murder."  Doc #6-4 at 2.

22 The superior court also found that "petitioner had an
23 unstable social history prior to the commitment offense, which is a
24 factor tending to indicate unsuitability for parole."  Doc #6-4 at
25 2; see Cal Code Regs tit 15, § 2402(c)(3).  The court referred to
26 petitioner's "[h]eavy drug use, school problems and prior

1 criminality" as evidence of his unstable social history.  Doc #6-4
2 at 2; see In re Van Houten, 116 Cal App 4th 339, 353 (2004).

3         The state appellate court summarily denied petitioner's
4 request for habeas corpus relief, Doc #6-10, and the state supreme
5 court summarily denied his petition for review.  Doc #6-11.

6         On this record, the court finds that the state courts'
7 rejection of petitioner's due process claim was not contrary to, nor
8 did it involve an unreasonable application of, clearly established
9 federal law, and it was not based on an unreasonable determination
10 of the facts.  See 28 USC § 2254(d); Williams, 529 US at 411;
11 Lockhart, 250 F3d at 1230.

12         The record shows that BPH had some reliable evidence to
13 support its finding of unsuitability.  Petitioner murdered a man he
14 did not know who had stopped to help stranded travelers on the
15 highway simply because petitioner needed a ride.  Doc #6-7 at 11-13.
16 This fact provides some evidence that the motive for petitioner's
17 crime was "materially less significant" than those which generally
18 cause people to commit murder, and therefore indicative of a
19 "greater risk of danger to society if [he is] released."  Doc #6-4
20 at 2.

21         The record also shows that petitioner used drugs heavily
22 as a juvenile and was arrested at the age of thirteen for having
23 needle marks on his arm.  Doc #6-7 at 14-18.  Petitioner dropped out
24 of high school and was later convicted of various crimes as an
25 adult, including an auto theft for which he was sentenced to prison.
26 Id.  These facts provide evidence showing petitioner's "unstable

1  social history" and indicating unsuitability for parole.  See Cal
2  Code Regs tit 15, § 2402(c)(3).
3        Because BPH's determination that petitioner was unsuitable
4  for parole and would pose an unreasonable risk of danger to society
5  if released is supported by "some evidence," petitioner's due
6  process rights have not been violated.  Sass, 461 F3d at 1128.
7  Although petitioner had factors indicating suitability for parole,
8  BPH considered the entire record and reasonably determined that
9  petitioner's history and the particularly egregious nature of his
10 offense showed that he was not yet suitable for parole.  See, for
11 example, Irons v Carey, 505 F3d 846, 850 (9th Cir 2007) (upholding
12 denial of parole based solely on gravity of offense).  It is not up
13 to this court to "reweigh the evidence."  Powell v Gomez, 33 F3d 39,
14 42 (9th Cir 1994).
15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27
28

**12**

IV

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

_____
VAUGHN R WALKER
United States District Chief Judge

G:\PRO-SE\VRW\HC.08\Montez-08-0815-parole habeas denial.wpd

13